UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN RE: | ) Case No. 24-03611-jd |
| | ) Chapter 13 |
| JACQUELINE ELIZABETH ARD | ) |
| and TERRY FRANK NICOLA, | ) |
| | ) King and Queen Building |
| | ) 145 King Street |
| Debtors. | ) Charleston, South Carolina 29401 |
| | ) |
| | ) March 26, 2025 |
| | ) 2:00 p.m. |

TRANSCRIPT OF MOTION FOR DAMAGES BASED ON CONTEMPT AND WILLFUL
VIOLATION OF THE AUTOMATIC STAY (DOC. 77)
BEFORE HONORABLE L. JEFFERSON DAVIS, IV
UNITED STATES BANKRUPTCY COURT JUDGE

APPEARANCES:

For the Debtor, Jacqueline       JACQUELINE ELIZABETH ARD, *PRO SE*
Elizabeth Ard:

For the Creditor, Estate         Franklin Legal Services LLC
at Westbury Owners               By:  JULIE A. FRANKLIN, ESQ.
Association, Inc.:               100 Bull Street, Suite 200
                                 Savannah, Georgia 31401

TRANSCRIPTION SERVICE:           TRANSCRIPTS PLUS, INC.
                                 435 Riverview Circle
                                 New Hope, Pennsylvania 18938
                                 Telephone:  215-862-1115
                                 e-mail CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript
produced by transcription service.

2

APPEARANCES:
(continued)

For the Creditor,              Bromley Law Firm LLC
Evan K. Bromley:               By:  EVAN K. BROMLEY, ESQ.
                               P.O. Box 570
                               Bluffton, SC 29910

3

I N D E X

| DEBTOR'S EXHIBITS | ID | EVID |
|---|---|---|
| 1   Letter (9/24/24) | 14 | 15 |
| 2   Email (11/11/24) | 16 | 16 |
| 3   Parking violation | 19 | 48 |
| 4   Photograph (parking violation) | 19 | 48 |
| 5   Articles of incorporation | 32 | 32 |

COURTROOM DEPUTY:  All rise.  The U.S. Bankruptcy Court for the District of South Carolina is now in session.

THE COURT:  Good afternoon.  Please be seated.

MS. FRANKLIN:  Good afternoon, Your Honor.

THE COURT:  If you don't mind, give me a minute to set up the computer.

(Pause)

THE COURT:  Good afternoon.  We're here today, Slot 20 at the 2 o'clock calendar.  The case is 24-3611, the case of Jacqueline Ard and Terry Nicola.

I'll take appearances.

MS. FRANKLIN:  Good afternoon, Your Honor.  Attorney Julie Franklin here on behalf of the Estate at Westbury Owners Association.

THE COURT:  Good afternoon.

MS. FRANKLIN:  And the individual board members.

THE COURT:  Okay; good afternoon.

MS. ARD:  Good afternoon, Jacqueline Ard here on behalf of Jacqueline Ard and Terry Nicola.

THE COURT:  Okay.  You -- are you an attorney?

MS. ARD:  No.

THE COURT:  Okay.  You cannot represent him in his interest in this case.

MS. ARD:  Okay.

THE COURT:  If he -- if he has anything to say, he

should be here for that.

MS. ARD:  Okay.

THE COURT:  Okay.

MR. BROMLEY:  Your Honor, Evan Bromley, and I am representing myself today.

THE COURT:  Okay.  Good afternoon.

Before I start; a couple of things.  Have you had the opportunity to speak to each other to see if this could be resolved without a hearing?

MS. FRANKLIN:  Your Honor, I actually spoke -- after I did not receive any responses with respect to the joint statement on Friday afternoon at approximately 5:01, I did communicate with the debtor.  I did ask if she would be willing to dismiss these issues and she indicated, unfortunately, she would not be.

THE COURT:  Okay.

The second thing that I would like to raise is the Local Rules of this Court require that exhibits be exchanged in advance, and that if there's any objection thereto, that should be noticed to the Court pursuant to Local Rule 5070.  I understand that has not been done.  Has that been done?  Have you exchanged exhibits?

MS. ARD:  No.

THE COURT:  Have they been premarked?

MS. ARD:  No.

THE COURT:  Has anyone had the opportunity to review what the other party is submitting to determine what the objections might be?

MS. ARD:  No.

THE COURT:  Okay.  I'm inclined to exclude all exhibits under that basis, but I may take what you have with any objection that the other party may have to it and consider that in considering the other evidence in this case.

MS. ARD:  Okay.

THE COURT:  Okay.  All right, Ms. Ard, this is your case.  I'll let you present.

MS. ARD:  Okay.  Just a quick question.  So, would you give us, like, a small continuance to do the exhibits?

THE COURT:  No.

MS. ARD:  Or you don't want that?

THE COURT:  No.

MS. ARD:  Okay.

THE COURT:  No, today's the day.

MS. ARD:  Okay.  In presenting my case, this is a case for violation of a automatic stay.

THE COURT:  And let me clarify with you on that. I've read your motion.  And as I understand it, you're alleging that the stay has been violated by Matthew Paul, Janet Spinelli, Ralph Paine, John Curtis, Deborah Schumann, and Evan Bromley.  Is that -- that's how I read the motion.

MS. ARD:  Yes.

THE COURT:  Okay.

MS. ARD:  And I included the --

THE COURT:  And the automatic stay has been violated -- I just want to narrow the issues here -- by those six individuals, and it relates to the towing of a vehicle at this condo.

MS. ARD:  Yes.

THE COURT:  Anything else on the stay violation?

MS. ARD:  Just that when they were notified, they acted against the automatic stay.

THE COURT:  Okay.  You've raised other things that I do want to -- I said that I'd let you present, but I'm sorry for interrupting you because I just want to narrow this down.

MS. ARD:  No problem.

THE COURT:  I retain jurisdiction to consider any violation of the automatic stay, and that's what you've filed by motion.

I think, Ms. Franklin, you raised whether or not that was proper.  I think bringing it by motion is the proper vehicle to raise a stay violation.  And she's done that by motion.

You also mentioned in your statement of dispute, Fair Debt Collection Practices Act, 14th Amendment, ADA violations, violations of the Fair Housing Act.  I didn't retain

8

jurisdiction to consider any of that. So, to the extent that you have that, I'm not sure where you would bring that. It's not here.

I'm considering one thing in a dismissed case, which is whether or not the automatic stay was violated. And if it was violated, whether or not there are damages that I can award.

MS. ARD: Okay.

THE COURT: Okay.

MS. ARD: Can I address that for those -- why I brought those in or -- well, the reason why I said the -- had the different case or laws in there is because the Association has a common practice of violating the law. And so those were some of the laws that they have violated in the past, so --

THE COURT: Okay. The only thing that I'm considering today is a very narrow issue, which is whether or not when -- when an automatic stay was in effect, whether or not willful action was taken that violated the stay, which created damages for you. That's it.

MS. ARD: Okay. So, in presenting my case, we filed a Chapter 13 bankruptcy on October 4th, 2024 in the District of South Carolina, that's evidence as ECF-1.

And immediately after the -- after filing the bankruptcy, I sent email messages to all of my creditors that I

was in connection with.

The Estate of Westbury had proceedings had -- had proceedings against me for foreclosure -- foreclosure proceedings. And so there was a court date scheduled for the 14th of October.

And so after filing, I immediately drew up a automatic stay letter, and I emailed it to Attorney Bromley. And I also emailed him a copy of the petition, the Chapter 13 filing. And that was at approximately 5:01 on October 4th.

On October 7th, which was that Monday because that was a Friday, on October the 7th, Attorney Bromley returned my email or responded to my email and stated that he had stayed all proceedings. And the case was being taken off of the roster until, you know, further notice. So, he confirmed that he did get the bankruptcy filing.

On October 8th, the Estate of Westbury board members broadcast an email stating -- and in the email, it stated that I was in foreclosure, and my parking and entrance gate passes were revoked, and any vehicles that I had on the property would be towed.

On --

THE COURT: I know this is not in evidence, but are we talking about the -- the agenda that you attached to your motion?

MS. ARD: Yes.

THE COURT:  Okay.

MS. ARD:  And that would be Exhibit -- that would be Exhibit E for Document 77.

THE COURT:  Okay, that's not an evidence.  So, that's attached --

MS. ARD:  Oh, okay.

THE COURT:  That's attached to your motion, but it's not an evidence.

MS. ARD:  Okay.

THE COURT:  So, if you --

MS. ARD:  I do have a copy of it here that I was going to --

THE COURT:  If you want to introduce that, I'll hear any objections to it.

MS. ARD:  Okay.

MS. FRANKLIN:  We object, Your Honor, on the basis that it's hearsay.

THE COURT:  Okay.  So, they've raised a hearsay objection.  And the objection on hearsay is their -- their objection is that you can't introduce it for the truth of the matter asserted within the document without some foundation being laid for it.

MS. ARD:  Okay.

THE COURT:  So, unless you have someone to authenticate the document, I'm going to sustain that objection.

MS. ARD:  Okay.  No, I don't have -- I wanted to question the witnesses, and that would verify that that --

THE COURT:  Okay.  Did you subpoena anyone to be here?

MS. ARD:  No, I listed it on that stipulation, so I didn't -- I didn't --

THE COURT:  It's not a subpoena.

MS. ARD:  I didn't know I had to subpoena.

THE COURT:  Sure.

MS. ARD:  Okay.  So, within that time, I tried to contact the Board and request that they --

THE COURT:  And let's -- let's define who the Board is, again, just so the record's clear.  We're talking about Matthew Paul, Janet Spinelli, Ralph Paine, John Curtis, and Deborah Schumann.  Is that -- is that who you are contending is a board?

MS. ARD:  Correct.

THE COURT:  So if you don't mind being a little bit more specific --

MS. ARD:  Okay.

THE COURT:  -- in your presentation.  When you say the Board, I'm taking it that you mean all five.  But if you mean any individual one, I'd like to know who specifically you contacted.  And -- and --

MS. ARD:  All five.

12

THE COURT:  You contacted all five.

MS. ARD:  Yes.

THE COURT:  On what -- on what date?

MS. ARD:  Well, the date that I have -- November the 11th --

THE COURT:  Okay.

MS. ARD:  -- was my final -- I sent a email.

THE COURT:  Anything to the Board before that date, to those five members of the Board?

MS. ARD:  Just phone calls.

THE COURT:  Just phone calls, okay.

MS. ARD:  So on November 11th at 11:27, I sent an email to each board member, notifying them that they had violated the automatic stay because they towed my vehicle off of the property.

THE COURT:  So when was that vehicle towed?

MS. ARD:  Well, after I filed, I had to go to Michigan, probably around the -- I think the 8th, or something like that.

THE COURT:  October 8th?

MS. ARD:  Um-hum.

THE COURT:  Okay.

MS. ARD:  And -- I run a business, and so I have people down there that help me run the business while I'm down there.

THE COURT:  Let me -- let me be a little bit more specific with you, because I'm making a record.  Down where?

MS. ARD:  I'm sorry.  South -- Bluffton, South Carolina.

THE COURT:  In Bluffton.

MS. ARD:  Yes.

THE COURT:  At the Estate at Westbury, you're running a business?

MS. ARD:  Yes, and I have the business license with me --

THE COURT:  Okay.

MS. ARD:  -- as evidence.

THE COURT:  And what -- what type of business is it, and who is running the business while you're out of state?

MS. ARD:  It is a property management business.  And I also -- because I have a commercial vehicle, I also do contract work for people to move their stuff, haul their stuff, and -- like, in and out of storage.  So --

THE COURT:  So, you're using the vehicle for moving things in and out of storage.

MS. ARD:  And -- right, and different -- and to different locations.

THE COURT:  Okay.

MS. ARD:  Maybe if somebody's moving from one home to the next or something like that.  And then I also use it for my

business, as well.

THE COURT:  Okay.  Your -- your business being property management.

MS. ARD:  Correct.

THE COURT:  Okay.  I think I'm caught up.

MS. ARD:  So I had one of my contract people or workers attempt to go and pick up the vehicle, and --

THE COURT:  And what date is this?  November 11th?

MS. ARD:  It would have -- it was approximately October 29th.

THE COURT:  Okay.  And when you say pick up the vehicle, pick up the vehicle from where?  From the --

MS. ARD:  I had parked it --

THE COURT:  From the condo?

MS. ARD:  I had left it parked inside of -- I mean in front of my unit.

THE COURT:  Okay.  Okay.

MS. ARD:  And so when he went to retrieve it, he told me that it wasn't there.

THE COURT:  Okay.

MS. ARD:  And that's how I got wind -- and at first, I had to do some, like, digging.  Like, did somebody steal it?  Or what happened to it?  But they had sent me -- they had delivered a letter, and I have that as a -- an exhibit.  They had delivered a letter to me stating that my parking decals

15

would be revoked.

THE COURT: Okay.

MS. ARD: And --

THE COURT: Do you want to introduce that letter?

MS. ARD: Yes.

MS. FRANKLIN: Can I see a copy of that?

MS. ARD: Do you want me to bring it there?

THE COURT: Any objections to --

MS. FRANKLIN: No objections, Your Honor.

(Pause)

THE COURT: We need copies of that.

MS. ARD: Right now?

THE CLERK: Yes, ma'am.

MS. ARD: Okay.

MS. FRANKLIN: Do you have a copy for me, as well?

MS. ARD: I think -- how many copies do you need?

THE COURT: Opposing counsel will need two. And, of course, I'll need one, and if you want to speak on it, you'll need one, as well.

MS. ARD: Okay. So, I have a total of four.

THE COURT: That -- that may be enough. I think that'll be enough.

MS. FRANKLIN: We can share, Your Honor.

THE COURT: Yeah, sure. Thank you.

(Pause/Parties engaged in off-the-record colloquy)

THE COURT:  Okay.  So we've marked as Exhibit 1 -- creditors will use the alphabetic system for anything you wish to introduce -- a letter to Jacqueline Ard regarding 100 Kensington Boulevard, Unit 1106, Bluffton.

It's letter dated September 24th, 2024, indicating that an account is delinquent, and if not paid in full by October 1st, parking decals associated with the unit will be revoked.

(Pause)

THE COURT:  Okay.  You --

MS. ARD:  On that same day, they emailed me, and then they delivered the letter to my door, as well.

THE COURT:  Okay.

MS. ARD:  So this is the email that goes along with it.

THE COURT:  Any objection to the email being introduced?

MS. FRANKLIN:  I don't have an objection, Your Honor.

THE COURT:  Okay.  We'll receive that, as well.  You want it as an attachment to Exhibit 1, as part of Exhibit 1?

MS. ARD:  Yes.

THE COURT:  So the email associated with the letter will be included as Exhibit 1.  And I believe the email is a delivery of the letter to you electronically.  Thank you.

(Debtor's Exhibit 1 in evidence)

THE COURT:  Okay.

MS. ARD:  So upon delivering the -- oh, upon them delivering me that, I mean, that's how I knew that it's more than likely them that did it.

When I tried to contact them or on the phone, I wasn't getting any response or any reply back.  So I emailed -- I sent an email stating that -- or sort of like a demand letter for them to return my vehicle.  And I gave them 24 hours because, like, I said I had --

THE COURT:  And this is an email that we're talking about where -- I'm sorry, I'm recovering from an illness and may cough during this.  I've just received an email, I think, date is September 24th.  But you're discussing an email, I believe, going back to your prior testimony, November 11th, about the vehicle, and the vehicle being towed and returned.

MS. ARD:  Yes.

THE COURT:  Okay.  Do you want to introduce that email?

MS. ARD:  Yes.

(Pause/Parties engaged in off-the-record colloquy)

MS. FRANKLIN:  No objection, Your Honor.

THE COURT:  Receive that as Debtor's Exhibit Number 2.

(Debtor's Exhibit 2 in evidence)

MS. ARD:  I do have attachments that I would like to

go along with that.  Upon receiving that email --

THE COURT:  Share all of them with creditor's counsel before I receive anything so we can resolve any objection --

MS. ARD:  Okay.

THE COURT:  -- that they might have to the entirety of the exhibit.

(Pause/Parties engaged in off-the-record colloquy)

THE COURT:  So if I understand where the parties are at, the email that's about to be admitted, dated November the 11th, from Ms. Ard to certain individuals about the towing of the vehicle.  There are other documents that are -- there is some objection to; I'm not sure what those are or what the objection is.

MS. ARD:  Well, the other documents that I asked about was I received email confirmations that my vehicle had been towed because my permit was revoked.

THE COURT:  Okay.  What's the objection to those emails?  Who are the emails from and who are they to?

MS. FRANKLIN:  Hearsay again, Your Honor.  They're not from the Board; they're not from EAW.  I think they're automated or generated.

THE COURT:  Okay.  If you don't mind, Ms. Ard, hand those up and I can make a determination about --

MS. FRANKLIN:  So, hearsay and relevance.

THE CLERK:  I'm sorry, is this the composite right

19

here?  Do you want these to go together?

MS. ARD:  Yes.

(Pause)

MS. ARD:  And this is the sticker that was on the window of the truck.

THE COURT:  What is -- what is ParkingAttendant.com? Is that something controlled by the Estate at Westbury?

MS. ARD:  Correct.

MS. FRANKLIN:  It's, I believe, a third party that isn't in the direct control of the Estate at Westbury.

THE COURT:  Okay.  I'll receive these into evidence. We'll mark it this Exhibit 3.  I'll determine what weight to give it in the course of --

MS. ARD:  So, the -- she -- she didn't object to this.  Actually that can go with the -- that was the sticker that was on my vehicle, which is put there by the parking attendant.  So, they stick that on the window.

THE COURT:  You'll -- you'll need to -- is there -- is there an objection to what this photograph is?

MS. FRANKLIN:  It's the same as before.  So, if Your Honor wants to take it under -- under consideration --

THE COURT:  I'll --

MS. FRANKLIN:  -- that's fine.

THE COURT:  I'll take it under consideration.  We'll mark both of these is Exhibit 3, with an objection by

creditor's counsel to this.  We'll mark that is 3, too.

Ms. Ard, who took this photograph?

MS. ARD:  I did.

THE COURT:  Okay.  When was the photograph taken?

MS. ARD:  Just recently when I -- when I returned back in town.  It's still on -- it's still on the vehicle right now.

THE COURT:  Okay.  So you say "recently," as in after --

Ms. Ard:  Yeah, I do -- I do have the -- oh, my phone is in -- I have the phone, and it tells you the date and time that it was taken.

THE COURT:  Okay.  I may -- I'm going to reconsider what I'm doing here.  I'm going to mark this is Exhibit 4.  I think this is -- I think these are two different issues.  So the photograph, Exhibit 4, and the parking violation email will be Exhibit 3.

(Pause)

THE COURT:  Ms. Franklin, what's the specific objection to 4?

MS. FRANKLIN:  I have -- hearsay; relevance.

THE COURT:  Okay.  Relevance objection.

MS. FRANKLIN:  And failure to lay the proper foundation.

THE COURT:  Okay.  I'll take both of these under

advisement.

(Debtor's Exhibits 3 and 4 taken under advisement)

MS. ARD:  Do you -- did I give you all the copies?

THE COURT:  So I have -- I have four exhibits:  1 is the parking photograph; 2, it appears to be an automated email from the Estate at -- or Notifications@ParkingAttendant.com; I've got an email dated November 11th; and a letter dated September 24th.

MS. ARD:  Okay.  So, I just need to give you --

(Pause/Parties engaged in off-the-record colloquy)

THE COURT:  Yeah, I think I'm -- I'm good with --

MS. ARD:  One copy?

THE COURT:  -- the copies that we have.

MS. ARD:  Okay.

THE COURT:  Yeah.  Yeah; thank you.

MS. ARD:  So after emailing them, there was no response.

THE COURT:  Let's go back to that.  Let me -- let me get specifically from you.  Emailing them on the 11th, what's marked as Exhibit 2.  Correct me if I'm wrong, but I'm understanding the presentation to be filed for bankruptcy on the 4th.  You let Mr. Bromley know by email on the 4th that you had filed.

And then the next email to anyone at the Board happened on the 11th, which is what I have as Exhibit 2.  Is

that correct?

MS. ARD:  Correct.

THE COURT:  So we're talking about the email on the 11th?

MS. ARD:  Yes.

THE COURT:  Okay.  Okay.

(Pause)

MS. ARD:  So after, I guess, a couple of -- approximately -- I did not bring that.  I had in this file -- Julie Franklin -- Attorney Franklin contacted me directly, and she stated that -- I believe that was approximately the 14th that she contacted me.  And she stated that she found out that they had towed my vehicle, and she apologized, and she said she corrected the situation.  And she had requested that they put the vehicle back.  And so she said, "Is it back?"  I said, "I'm not for sure because I'm not back in town.  I could have somebody, you know, verify it and check later to see if it was back in the location."

And she also stated, "Well, if you need anything else, then you can contact me, I'm the attorney."

I was -- I -- I had never been introduced to Julie Franklin.  None of the collection notices or proceedings in court involved or even stated Attorney Franklin as legal counsel the entire time.  Every correspondence had only been with Evan Bromley.

And I know he was aware of the automatic stay in the bankruptcy because he confirmed, and also that the court hearing that was scheduled for the 14th was canceled.

THE COURT:  Do you know when the vehicle was returned?

MS. ARD:  So, it -- well -- no.  It had to be after attorney --

THE COURT:  After the 14th.

MS. ARD:  Um-hum.

THE COURT:  Okay.

MS. ARD:  After Julie Franklin contacted me.

THE COURT:  Okay.

MS. FRANKLIN:  So, Your Honor, not to make this unwieldy, but we obviously object to the hearsay.  I mean, it's sort of -- it puts me in a difficult position.

THE COURT:  Sure.

MS. FRANKLIN:  But we'll just -- we'll address that when we present our case.

THE COURT:  That's -- that's fine.

So what she's objecting to is you're saying what she told to you; that's hearsay.  You're offering something that someone said for the truth of the matter asserted.  If you want to develop that evidence, you have to do it according to the Rules of Evidence.

So I'm going to sustain her objection, to the extent

that you've offered as a proffer what someone else told you.

MS. ARD:  Okay.  So, would the -- would it be proper if I called her as a witness?

THE COURT:  She's the attorney in this case, and you haven't subpoenaed her.

MS. ARD:  Okay.

THE COURT:  So from my perspective, you haven't given the Estate at Westbury or the other people that you've named any notice as to who that is, and you haven't brought it the proper way.

MS. ARD:  So after --

THE COURT:  I'd stop you there.  There was other things raised -- I should have addressed this at the outset -- in your amended motion about sanctioning Ms. Franklin and other things.  I'm not doing that.

The defenses that she raised were proper defenses. There's no ground for contempt or sanctions against an attorney for making, you know, arguments that are --

MS. ARD:  My -- my purpose in saying that is I feel like attorneys take a oath to uphold the law and be truthful. And I understand that you have clients and -- and you have to support what their position is.  But the facts of the case are I filed a bankruptcy.  It was noticed.  I contacted the attorney, and the only attorney of record that I knew, and he confirmed that there was an active bankruptcy and the automatic

stay in place.

So when Attorney Franklin introduced that they didn't know about it, and she wasn't properly noticed or notified of it, I was -- I was addressing that comment.

THE COURT:  Okay.

MS. ARD:  You know, because clearly --

THE COURT:  Sure.

MS. ARD:  -- something went wrong somewhere.

THE COURT:  I think -- I think the defenses that she raised were proper.  I don't think that the creditor necessarily owes a duty to advise a debtor as to changes that they make internally in terms of who is their agent, who represents them.

So to the extent you're seeking sanctions against Ms. Franklin, that's denied.

MS. ARD:  Okay.  So for the purposes of --

THE COURT:  Sure, I understand what you're saying. Sure.

MS. ARD:  For --

THE COURT:  I just want to deal with --

MS. ARD:  Facts.

THE COURT:  -- the one thing that I retain jurisdiction over --

MS. ARD:  Is the automatic stay.

THE COURT:  -- which is whether or not the stay has

26

been violated.  And if it has been, who violated it; have you proven that those people violated it; and have you been damaged?

MS. ARD:  Okay.  So, of course, like I said, the -- the auto -- I mean, the case was filed on the 4th.  They were informed on the 4th and acknowledged on the 7th.

THE COURT:  And by "informed on the 4th," informed by Evan Bromley?

MS. ARD:  Correct.

THE COURT:  Okay.

MS. ARD:  Who is --

MR. BROMLEY:  Objection.  I think the testimony is she informed me.

THE COURT:  Informed you.

MR. BROMLEY:  Yes.

THE COURT:  Yeah.  I think I'm clear on --

MR. BROMLEY:  Yeah.

THE COURT:  -- who got notice of what.

MS. ARD:  So, the automatic stay is a matter of law, and violation doesn't happen whether you know it -- that you know that the automatic stay is in place or not in place.  It's automatic.  So when it goes in place, if you violate it, whether you know of it or not, it's against the law.

So I feel, on my end, I did my due diligence to notify them and make them aware not to violate the automatic

27

stay.  And they -- and after being notified, they made further actions of harm.  And those actions were -- they weren't appropriate by the law because they -- they don't have the right to tow my vehicle for any reason unless it's blocking and -- unless it's blocking a vehicle or it's inoperable.

So as a owner of that -- Estate of Westbury, I have the right to park whatever vehicle I'm driving or that pertains to me on the property.  And I made every provisions [sic] beforehand that they know that that was my vehicle.  I gave them the information for my vehicle and I had a sticker in the window that they issued, and that sticker that they issued previously was active and, you know, no problems.

They went further, again, after the filing and deactivated it and revoked that privilege, which that, in itself, is against the law.

THE COURT:  What evidence do you have as to the day that the parking decal was revoked?

MS. ARD:  Well, the only written evidence is that email that stated that my vehicle was in violation because my -- that passed -- I mean, the parking was revoked.  So it states on there specifically why I got a violation.

THE COURT:  And I'm looking -- correct me if I'm wrong.  I'm looking at what's been marked as Exhibit 1, the letter indicating that unless a certain amount is paid in full by October 1st, all parking decals will be revoked.

MS. ARD:  Correct.

THE COURT:  So is it your testimony that the decal was revoked on October 1st?

MS. ARD:  I would be assuming, but I assume that it was actually revoked when they sent the email letter out stating that they were going to revoke it.

So I would -- again, I was there beforehand, and they didn't do anything to my vehicles.  I was there up until the 7th.

THE COURT:  Okay.

MS. ARD:  And my vehicles weren't towed off of the property.  So it had to happen -- or the revocation had to happen after that point because I was on the property before then.

THE COURT:  Did you have any other vehicles on the property?  I know there was some dispute about which vehicle this was.  Did you have any other vehicles on the property?

MS. ARD:  Yes, but I also have where all of my vehicles are registered with parking passes.

THE COURT:  But you -- you had other vehicles on the property.  Were these vehicles towed?

MS. ARD:  No.  At the time that they towed that, no, I did not.  I only had my vehicle.

THE COURT:  You only had --

MS. ARD:  Before --

THE COURT:  You only had this one vehicle that I think is --

MS. ARD:  A Ram --

THE COURT:  -- identified --

MS. ARD:  As a commercial Ram truck.

THE COURT:  Okay.

MS. ARD:  So --

THE COURT:  That was the only vehicle on the premises after --

MS. ARD:  Huh-huh.

THE COURT:  -- after the date of the bankruptcy case.

MS. ARD:  Up until the 7th, both vehicles were on --

THE COURT:  Okay.

MS. ARD:  -- the property.  And then I left --

THE COURT:  You left this property on the 7th --

MS. ARD:  Um-hum.

THE COURT:  -- and went to Michigan or Pennsylvania.

MS. ARD:  Everywhere.  Yes, um-hum, both.

THE COURT:  Leaving one vehicle behind.

MS. ARD:  Correct.

THE COURT:  Okay.

MS. ARD:  And on the 8th, I received that broadcast email stating that they have been -- I'm going to --

(Pause)

THE COURT:  I've seen that, and I think there's some

30

objection to the -- to the minutes for lack of foundation.

That's an objection that I sustained, but I'm -- I'm aware of

the -- I'm aware of the contents of that.

MS. ARD:  Was -- yes.  And I know it's -- it's in

here because I just made a copy of it.

(Pause)

MS. ARD:  Again, it was --

THE COURT:  I think she can testify that she received

it.

MS. FRANKLIN:  I don't have an objection to her

testifying --

THE COURT:  Okay.

MS. FRANKLIN:  -- she received it.

THE COURT:  Okay.

MS. FRANKLIN:  I do have an objection with it going

into evidence.

THE COURT:  Okay.

(Pause/Parties engaged in off-the-record colloquy)

MS. ARD:  I also want to enter into evidence my

vehicle registration and --

(Pause/Parties engaged in off-the-record colloquy)

MS. ARD:  So -- and this is the application for my

unit, and it has all the tags that they gave me.  This was in

the --

MS. FRANKLIN:  I have never seen this.  It is not in

our file.  I have requested it from you.

MS. ARD:  I did --

MS. FRANKLIN:  So --

MS. ARD:  I emailed it to you.

MS. FRANKLIN:  I have to object to this.

THE COURT:  Is this a vehicle registration with the State of South Carolina or with --

MS. FRANKLIN:  No, it's a vehicle registration with the State of Ohio regarding the Pro Master 3 2 8 9 VIN number.

THE COURT:  Okay.  I thought there was some stipulation that you had determined that she does have some ownership interest in the vehicle.

MS. FRANKLIN:  She does have ownership interest in the vehicle, Your Honor.

THE COURT:  Ms. Ard, are you wanting to introduce this to show that you've got an ownership interest?

MS. ARD:  Correct.

THE COURT:  Okay.

MS. FRANKLIN:  I don't --

THE COURT:  Do you --

MS. FRANKLIN:  I don't have an objection for that purpose.

THE COURT:  Do you stipulate that she has an ownership interest in the vehicle?

MS. ARD:  I just wanted to --

MS. FRANKLIN:  Absolutely, Your Honor.

THE COURT:  Okay.  So --

MS. ARD:  And -- in regards --

THE COURT:  I'm happy to receive it with the objection.  I'm not sure it's material because it's already been stipulated that you've got an ownership interest in the vehicle that was towed.

MS. ARD:  Okay, that's fine.  I don't have to submit --

THE COURT:  It's up -- I'm not going to dictate your case to you.  So if you want to introduce it, please -- please introduce it with the objection that Ms. Franklin has --

MS. ARD:  I just wanted to clear up her --

THE COURT:  Sure.  I saw in her statement of dispute that she --

MS. ARD:  Right.

THE COURT:  She had --

MS. ARD:  That it might not be my vehicle.

THE COURT:  That it might not be yours, but she stipulates that it is your vehicle.

MS. ARD:  And then I was also confirming that, even if it wasn't my vehicle, the tag that they issued me as the owner was in that vehicle.

THE COURT:  Okay.  Is there anything else that you want to present in your case?

MS. ARD:  The -- I would like to present the business license.

THE COURT:  Okay.

MS. ARD:  And the articles of incorporation.

MS. FRANKLIN:  Your Honor, I object as to relevance. This is regarding, I believe, her property management company.

THE COURT:  Okay.  I'll -- I'll receive the -- I'll receive it with that objection, and -- and give it weight -- I'm not sure it's material to the case, but I'll receive it with the objection.

(Debtor's Exhibit 5 in evidence)

MS. ARD:  So, again, the -- the automatic stay is a automatic injunction.  And whether all of the board members knew about the automatic stay or they didn't, they didn't know -- they should have known.  They -- they definitely should have known because we had a court proceeding that they were going to appear on October 4th -- October 14th.  So if that was canceled, they had to inquire as to why it was canceled.  So when they say that they didn't know about it, or they -- they weren't, you know, for sure they weren't properly notified, that doesn't -- it's -- it's -- it's a matter of law.

And so I did all of my part to let them know, and to also give them the opportunity to cure it so they can -- could stop incurring damages for me because, again, that's part of my business.  I had to shut it down without my -- my truck.  You

know, that's how I -- I -- I -- I move things around, and that's how I function and operate my business.  And that's why I presented the business license.

THE COURT:  Okay.

MS. ARD:  But that house -- I also live there, and I run my business out of it.  So when my privileges to access it and my vehicle was removed, then that halts everything for me.

THE COURT:  Did you make any attempt to access the house between the date of the petition and the date of dismissal?

MS. ARD:  The dismissal?

THE COURT:  Yeah.

MS. ARD:  No, just between --

THE COURT:  Okay.

MS. ARD:  -- October the -- October the 7th.

THE COURT:  Okay.

MS. ARD:  Again, after I --

THE COURT:  You had access to the house at the time you left on October 7th.

MS. ARD:  Right.

THE COURT:  Okay.

MS. ARD:  But I had intentions on coming back.  And, again, when I got that broadcast message -- because I didn't leave immediately and go to -- to Michigan.  Actually, it was a storm going on, and there was somebody in North Carolina that I

went and took food and stuff to there.

THE COURT:  Okay.

MS. ARD:  So once I got that broadcast message -- you know, the stress of a bankruptcy, I said, I can't go back there.  And my husband was also with me, and stress makes his situation worse.

And so we really didn't have a place to stay down there and feel comfortable because the -- the tension that had built up and everything, I -- I thought it would be best for me to just go and stay, you know, with my family in Michigan.

THE COURT:  Okay.

MS. ARD:  So we -- from there, we didn't come back, we proceeded to Michigan.

And, again, their actions weren't -- they weren't in line with the Fair Debt Collection Act.  So even if they say they didn't know, they broke the law in how they -- they tried to collect or get collection.

THE COURT:  And I would say you may -- if -- if you have a Fair Debt Collection Practices action, I'm not the guy to hear that.

MS. ARD:  Okay.  So as far as damages are concerned, their -- in -- their actions and them violating my property rights and my invasion of privacy, you know, that created an enormous amount of damage for me because that's ultimately one of the factors of why my bankruptcy was dismissed.  You know, I

36

-- they put the automatic stay in place for a reason, and filing bankruptcy is already difficult for a person that's represented.  It's ten times different -- difficult for a person that's unrepresented.

So with me trying to funnel through all of the requirements of the Court and fight these battles of creditors, violating the automatic stay, it made it impossible.  And so -- and that's why I kept asking for extensions, because I had to put out this fire, and I had to put out that fire, and also continue to try to operate my business and not go under, you know, with everything.

So I feel -- or the law states that I didn't comply by presenting the documents that I was supposed to present, the creditors that violated the stay are also -- have also violated the law in not adhering to the injunction because they go hand in hand.  You know, I'm not able to proceed successfully if they're not doing their part.  So it's hard.  It's hard for me to do my part when everybody else is not doing their part.  And that's why the automatic stay was put in place, because you're supposed to immediately halt so that I can have an opportunity to proceed.  So I feel like me and my husband, we were robbed of that.

And the damages.  His disease progressing and him getting worse, I can't go back and get that back.  You know, all of the time and energy and heartache that I have to

encounter, and then have to be forced to file another bankruptcy to try to get everything together, I can't -- I -- the two bankruptcies will be on my credit report for the next ten years, and I'll have to suffer all of the circumstances for that, you know?  I'll get high interest rates, you know?

So, this wasn't something that was just simple.  This -- these actions damaged me and my husband for the rest of our life.  And, again, I'm -- I'm still -- and it's putting me even further behind.  If you're already behind, and then you don't get the opportunity that's afforded in the act, then I'm even further behind.  I was already behind when I filed.  So now I'm even further behind.

And because I had all these issues, every time that I tried to obtain counsel, nobody will help me.  So I'm forced -- the -- the attorneys that I go to, they say there's nothing you -- you can do.  You just -- you got to just lose everything.  And I'm not willing to do that, and especially I worked 40 years to -- to have what I have and -- and -- and be where I am.  You know, it's unfortunate for me.

You know, yesterday was my birthday.  I turned 53 and I have -- even with the bankruptcy, because I'm still pursuing, you know, getting all the paperwork in and finishing it because I am a good debtor.  I didn't file -- and -- and I'm a bad debtor.  I have all of the requirements of filing.  But the deficiency is -- I'm filing it for myself and I -- and it's --

it's extremely difficult, almost impossible, but I don't have a choice.  I have -- that's what I have to do.

So as far as damages goes, on a lot of those things, you can't put a price on or an amount on what my loss is and what it continues to be.

THE COURT:  Anything else?

MS. ARD:  I -- I ask the Court to -- in this situation, like I said, it's a matter of law.  I ask the Court to use its inherent powers to uphold the law and also award us for the damages and loss that we occur [sic].

THE COURT:  Okay.  Thank you.

MS. ARD:  I rest my case.

THE COURT:  Thank you.  Ms. Ard, I would say you've done a good job with your paperwork and with your presentation.  So nothing to hang your head down about that.

MS. ARD:  Thank you.

THE COURT:  And --

MS. ARD:  Sorry it was so --

THE COURT:  No, it was fine.  And I -- I understand, as someone who has been a caregiver for the last 18 years for my son who suffers from a debilitating condition how wearing that is, and I'm -- my heart goes out to you on that.

MS. ARD:  Thank you.

THE COURT:  Mr. Bromley, I'd like to hear from you first.

MR. BROMLEY:  Okay.  Yes, Your Honor.  May it please the Court, Evan Bromley.

I'm certainly empathetic to Ms. Ard's personal circumstances, but she's filed an individual claim against me.  And I -- in my whole -- sole -- though I operate a law firm in Bluffton, South Carolina, I am engaged for a limited scope with the Estates at Westbury.  I do perform some collections work for them.  I was engaged to have -- to initiate a foreclosure action due to past due assessments.

I believe that you've heard Ms. Ard's testimony that that foreclosure action was initiated -- or the foreclosure action was initiated in June 20 -- June 25, 2024.  Ultimately, she was in default in that a foreclosure hearing was scheduled for, I believe the -- October 16.

She emailed me notice on October 4th.  And I believe, as according to her own testimony, I immediately took action to file a motion to stay the foreclosure proceeding.  An order, which was attached to my motion -- I know it's not entered into evidence, but an order staying the underlying foreclosure proceeding was entered on October 16th.

I never had any type of communication or anything with Ms. Ard until the bankruptcy case was dismissed on November 21.  And then on December 3, we filed a motion to restore the foreclosure action, and that foreclosure action went forward.

I'm not a creditor.  I haven't taken any kind of action with respect to Ms. Ard.  And I had no knowledge of anything related to any alleged action related to any type of vehicle.

THE COURT:  Well, do you --

MR. BROMLEY:  And she is -- seeks --

THE COURT:  Do you mind if I ask you some questions along that line?

MR. BROMLEY:  Sure.  Yes, sir.

THE COURT:  Did you take any part in the towing of the vehicle?  Did you ask for that vehicle to be towed?

MR. BROMLEY:  I had no knowledge of it.

THE COURT:  Are you an agent for Matthew Paul?

MR. BROMLEY:  No.  No, sir.

THE COURT:  Are you an agent for Janet Spinelli?

MR. BROMLEY:  No, sir.

THE COURT:  Are you an agent for Ralph Pine [sic]?

MR. BROMLEY:  No, sir.

THE COURT:  An agent for John Curtis?

MR. BROMLEY:  No, sir.

THE COURT:  Are you an agent for Deborah Schumann?

MR. BROMLEY:  No, sir.

THE COURT:  Okay.

MR. BROMLEY:  No, Your Honor.  And so she seeks to hold me vicariously liable for alleged actions of the Board.  I

think she has cited a couple of cases in her motion, specifically the In Re LeGrand case that -- Your Honor is probably familiar with it.  But it dealt with the creditor and the attorney got a money judgment order that was ultimately put into an employee withholding order, an EWO.  And this was prior to the -- a bankruptcy being initiated.

Once that bankruptcy was initiated and the stay was imposed, the creditor and the attorney, they knew and had knowledge, but they did not terminate that EWO, and they let it stay in place.  And during the pendency of the bankruptcy, it turned out that the worker -- the debtor's wages were garnished twice.  And then the debtor brought a proceeding as to a violation of the stay against both the creditor and the attorney.

And in that action, the court did find the attorney liable, but that was because they found willfulness in the fact that when -- that -- that a creditor who knows that the stay and has power to revoke some contingent action that would violate the stay, but declines to do so, they -- they call that willful.

And the only action that I have ever been involved in was the foreclosure, and it's been nothing but, I believe admitted on the record, that that action was stayed.  I took no action with respect to anything else in that.

And so I would respectfully ask this Court to deny

the claims against me and dismiss it with prejudice.

THE COURT:  All right.

Ms. Franklin?

MS. FRANKLIN:  Good afternoon, Your Honor.  Attorney Julie Franklin, general counsel for EAW, the condo association.

With respect to Ms. Ard's plight, I also empathize. I am a caregiver, as well, and I know intimately how stressful that is.

Unfortunately, the fact that we have elected to file pro se bankruptcies, which require procedural follow-up and follow through in this particular case, and they have not been met in not one, but two cases since the filing of this initial South Carolina case.

Ms. Ard's claims specifically state that EAW has violated 11 U.S.C. 362.  With respect --

THE COURT:  I just --

MS. ARD:  Can I object?

THE COURT:  No, I'd like to hear argument.  But I just want to clarify, my understanding is this is not an action against EAW.  This is an action, as is styled, against six individuals.

MS. FRANKLIN:  And that is also at issue, Your Honor. So with respect to the five individuals and Attorney Bromley, in this particular case, as he has just referenced, he is collection counsel.  He immediately took steps to cease all

collection activity when he became aware of the bankruptcy filing.

With respect to the five board members and the debtor's testimony, insofar as any of this was outside of the scope of the ordinary course of business in their conduct on behalf of the condo association, South Carolina Annotated Code, Section 33-36-660 indemnifies board members who are acting in the ordinary course of their duties.

The debtor has not met her burden of showing that those were outside the scope. She has produced documentation that says notice was provided to her in advance of this filing concerning the revocation of those decals.

We ask that, for the foregoing reasons with respect to all of Ms. Ard's claims, that they not only be dismissed with prejudice as to the five individual board members and Attorney Bromley, but also that sanctions be entered pursuant to Rule 9011 for improper pleadings without sufficient evidence being filed on a repeated basis in -- with respect to those sanctions.

I, again, express empathy, but this is a circumstance in which not one, but two attorneys for a nonprofit condo association have had to expend countless hours on filing pleadings, and complying with court orders, and traveling two hours here and two hours back to -- to attend this hearing. And Ms. Ard has filed not one, but two bankruptcies that have

been dismissed for failure to file documents.  And when it comes to the Bankruptcy Code, knowledge is chief amongst the requirements.

Now, Ms. Ard has produced an email that is dated November 11th to the individual board members.  And as she testified, we did speak on November 14th.  I became aware of that email on November 14th, the morning of.  As general counsel with a background in bankruptcy from Boston, we immediately and promptly took steps to have that vehicle returned at no cost to her whatsoever.

There have been no damages to her.  There was not a bill produced for any towing.  She has not produced any evidence that she has actual damages.

She's indicated that she's lost contracts.  She hasn't produced any evidence in support of that.

She testified that she was actually out of state from the period of time of October the 7th, at least until November 14th; I'm unclear as to when she returned.

But in any event, the requirements for a violation of the automatic stay rest heavily on the learning of the bankruptcy.  It is simply not enough to file a bankruptcy and then hope in the ether that everyone has an affirmative duty to act.

I have provided a citation to the City of Chicago, Illinois v. Fulton, which is 592 U.S. 154, 2021 Supreme Court

case.  And in that Supreme Court case, it states specifically that mere retention of estate property after the filing of a bankruptcy petition does not violate the automatic stay provided it does not materially change the status quo.

In light of the fact that, upon learning of this, the day of it was returned with no actual damages to her whatsoever.  She has not even testified that she was in-state to ascertain for herself that it was there.

We ask that all of these claims, again, be dismissed with prejudice to all parties named by the debtor and that the Court enter sanctions against the debtor because actions do have consequences.

THE COURT:  Have you --

MS. FRANKLIN:  And in this particular case, they're substantial.

THE COURT:   Have you filed a 9011 motion?

MS. FRANKLIN:  I have not filed in 9011 motion.

THE COURT:  Okay.

MS. FRANKLIN:  I have pled it.  I would be happy to brief it, and file it, and provide an exhibit attaching the amount of time that both Attorney Bromley and myself have expended and had to bill to our client as a result of this, if it pleases the Court.

I do also understand that there are some --

THE COURT:  Does she not having safe harbor on this?

MS. FRANKLIN:  I -- she -- I -- I respectfully -- I think that she may, Your Honor.

THE COURT:  Okay.

MS. FRANKLIN:  And I don't wish to prolong this.  It just -- it's been a taxing endeavor.

THE COURT:  Okay.  At this point, I'm going to deny request for sanctions under 9011.  So you don't need to address that.

I'll -- if you're done, Ms. Franklin --

MS. FRANKLIN:  Yes, Your Honor.

THE COURT:  I'll give you five minutes of rebuttal.

MS. ARD:  Okay.

THE COURT:  And rebuttal's limited to the issues that they've raised on their argument.

MS. ARD:  Okay.  She -- she brought up that I've -- she continues to bring up that I filed two bankruptcies, which alleges that I'm a bad debtor.

You know, filing a bankruptcy is not illegal, and you failing to submit the documents is also not illegal.  It's a deficiency of you proceeding.  So as far as doing something wrong, or given the implication that I am proceeding in bad faith or with bad intentions, you know, I object to that.

And when she states that -- the case about the -- them retaining a vehicle, the constitution gives me property rights.  Any vehicle that I have, I have rights to that

47

vehicle, unless I surrender or give someone else the interest to that vehicle.

I am a owner at Westbury Estate, which gives me the rights to be on the property, to park my vehicles, whatever vehicles I have on the property, to invite anyone that I want on to the property.

So the Association is not a owner. They are the -- they represent the owners, and I am a owner.

So it was improper and against the law for them to remove a owner's vehicle from the owner's property. So retention -- she -- they violated the law when they towed my car. They had no reason whatsoever to tow it, other than to cause harm in a situation that they already knew that I was behind. Even with me being behind on the debt, you already know that there must be a financial problem if I'm behind.

So, if you take my vehicle that I need to function or make money with, because it's a commercial vehicle, it's not just a vehicle -- a recreational vehicle. They know that it's a commercial vehicle. So there's no way that you wouldn't know that you're going to cause harm if you remove a commercial vehicle for -- that someone used for business purposes.

So the mere removing of the vehicle violated not only the automatic stay, but it also violated the constitution because they had no right to touch my vehicle and remove it anywhere.

48

And I think that's it.

THE COURT: Okay; thank you.

I agree with Ms. Ard, that towing of the vehicle would be a violation of the stay. Unfortunately, I think that you have not proven your case specifically in this regard.

I've heard no evidence that Matthew Paul asked the vehicle be towed; Janet Spinelli asked for it; Ralph Paine, John Curtis, Deborah Schumann, or Evan Bromley. Without evidence that they took individually these actions to tow the vehicle, I cannot grant you relief.

Secondarily to that, I -- I understand that you see this as an invasion of privacy, but I cannot find that you've suffered actual damages as a result of this. You didn't know when the vehicle was towed. Didn't even know when it got back. There's been no testimony as to income that you lost through this business.

The vehicle, as you testified, was for business and for moving. No evidence of lost contracts or lost income as a result of the vehicle being towed.

Also no evidence as to when Matthew Paul, Janet Spinelli, Ralph Paine, John Curtis, or Deborah Schumann even got noticed in their individual capacity.

I don't think that I need to take up the issue that you raised, Ms. Franklin, about the shield of estate law. I'm not sure -- I've looked at case law on that, and I'm not sure

that that applies to a stay violation.  But I don't think that I need to reach that issue in determining the matter because I've heard no testimony or evidence that the six individuals named in the motion actually took any action.

I know that the vehicle was towed.  But there's no evidence that they did it.  Perhaps the Estate at Westbury did it.  You didn't name them as a -- as a party to this action.

MS. ARD:  So, can I file a motion to reconsider and add them to the complaint?  That's what I would like to do.

THE COURT:  I can't give you any advice on that.  But I set a pretty firm scheduling order as to when to bring actions, and as to who to name when.  That hasn't been done.

So regardless of if they're named, I don't think there's been any damages based on the testimony.

So, this is a business vehicle, that you testified you don't even know when it was towed.  No evidence of lost income as a result of that.  Didn't really even know when you got it back.

So to the extent that it was a violation of the stay, and I think it was, that it got towed, the secondary part of that is damages.  And I cannot find, based on the evidence that I've heard here today and what's been admitted, and I'm going to admit all of the exhibits over your objection, into evidence because I don't think they're material to the outcome of the case.

50

(Debtor's Exhibits 3 and 4 in evidence)

THE COURT:  And Ms. --

MS. ARD:  Can I motion for a continuance to present that evidence?

THE COURT:  No.  Today's the day of the hearing.

And, Ms. Franklin, I would ask that you prepare the order.  Circulate it to Mr. Bromley and to the debtor, and that that be submitted to my chambers by email in the next two weeks.

MS. FRANKLIN:  Absolutely, Your Honor.

THE COURT:  Okay.  That's the ruling of the Court.

MS. ARD:  I --  I'd like to request a motion to file the adversary proceedings.

THE COURT:  I'm -- I'm going to deny that.  The scheduling order was the scheduling order that I set back in January.  I'm not giving a second bite at the apple on this.  I set a pretty firm scheduling order because I didn't want 50 actions pending.

I think motions for stay violation should be brought by motion and not by adversary case.  And you've -- you've filed a motion in this case.  You filed two adversaries that are that are pending, but that's -- that's the ruling of the Court.

Thank you.

MS. FRANKLIN:  Thank you, Your Honor.

51

MR. BROMLEY:   Thank you.

THE COURT:   Court is adjourned.

THE CLERK:   All rise.

(Whereupon, at 3:13 p.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ *Karen Hartmann*

Karen Hartmann, AAERT CET 475  Date: April 3, 2025

TRANSCRIPTS PLUS, INC.