## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 24-03611-jd |
| | Chapter 13 |
| Jacqueline Elizabeth Ard and Terry Frank Nicola, | **ORDER DENYING DEBTORS' MOTION FOR DAMAGES FOR VIOLATION OF THE AUTOMATIC STAY** |
| Debtor(s). | |

Before the Court are the Motion, filed on January 10, 2025,[1] and the Amended Motion, filed on January 27, 2025,[2] of Jacqueline Elizabeth Ard and Terry Frank Nicola ("Debtors") for damages and contempt for violations of the stay (collectively the "Motion for Damages") by Evan Bromley, John Curtis, Ralph Paine, Matthew Paul, Debra Schumann, and Janet Spinelli (collectively referred to as the "Respondents").[3] A hearing on the Motion for Damages was held on March 26, 2025. Appearances were made by Jacqueline Elizabeth Ard ("Ard"), appearing *pro se*; attorney Evan Bromley ("Bromley"), also appearing *pro se*; and Julie Franklin ("Franklin") on behalf the Estate at Westbury Owners Association, Inc. ("EAW") and the individual Board Members. Ard moved to admit into evidence various documents to support the Motion for Damages.[4]  The Court considered whether Respondents willfully violated the automatic stay of 11 U.S.C. § 362,

---

[1] ECF No. 77.

[2] ECF No. 87.

[3] Although there are six named Respondents in this matter, during the time period in question, Evan Bromley acted as attorney for the Estate at Westbury Owners Association, Inc., and the remaining respondents – John Curtis, Ralph Paine, Matthew Paul, Debra Schumann, and Janet Spinelli – acted as board members for that entity; as such, the five board members will collectively be referred to as "Board Members."

[4] The Court notes that the parties did not comply with SCLBR 9070-1, which requires parties in a contested matter to exchange exhibits and confer in advance of the hearing to determine whether they will be able to stipulate to the admission of exhibits. The Court admitted into evidence: a letter from EAW to Ard dated September 24, 2024 (Exhibit 1); an email from Ard to EAW dated Nov. 11, 2024 (Exhibit 2); an email to Ard regarding a parking violation dated Oct. 26, 2024 (Exhibit 3); an undated photo of a towing notice (Exhibit 4); and Articles of Organization of Beachside Vaca, LLC (Exhibit 5).

but ultimately determined that Debtor failed to prove damages proximately resulting from any willful conduct by the Respondents, rendering relief pursuant to 11 U.S.C. § 362(k) inappropriate.

At the hearing, the Court announced an oral ruling denying Debtors' Motion for Damages.[5]  Pursuant to Fed. R. Civ. P. 52, made applicable to this contested matter by Fed. R. Bankr. P. 7052, 9014(c), this Order memorializes the findings and conclusions announced by the Court at the hearing.[6]

## **FINDINGS OF FACT**

Debtors have an ownership interest in property located at 100 Kensington Boulevard, Unit 116, Bluffton, SC 29910 (the "Property").[7] The Property is managed by EAW.  Prior to the bankruptcy filing, EAW, represented by Bromley, filed a foreclosure action against the Debtors.[8] On September 24, 2024, EAW delivered a demand letter to Debtors stating their HOA account was delinquent in the amount of $15,226.83 and their parking decals would be revoked if the arrears were not cured by October 1, 2024.  Three days after that deadline expired, Debtors filed the Chapter 13 Bankruptcy case.[9]

With the petition, Debtors filed a list of creditors.[10] The Bromley Law Firm LLC was included in that list, and as such, received notice of the bankruptcy filing from the

---

[5] After the decision was rendered, Ard made an oral motion for a continuance to subpoena witnesses, compile and present additional evidence, file a motion for reconsideration to add EAW to the Motion for Damages and Amended Motion for Damages as a liable party, or to bring an adversary proceeding against the EAW, Bromley, the Board Members, or Franklin. The motion was denied.

[6] To the extent the following findings of fact are conclusions of law, they are adopted as such, and vice versa.

[7] *See* Schedule A/B at ECF No. 43.

[8] *See Estate at Westbury Owners Association Inc. vs. Jacqueline E. Ard, et. al.*, 2024CP0701407, Beaufort County Court of Common Pleas (filed June 25, 2024).

[9] ECF No. 1 filed October 4, 2024.

[10] ECF Nos. 8 and 9.

Bankruptcy Noticing Center.[11] Debtors amended the list of creditors on October 29, 2024,[12] therein listing Evan Bromley, John Curtis, Ralph Paine, Matthew Paul, Debra Schumann, Janet Spinelli, and EAW as creditors.[13] Debtors provided notice to these newly added parties by mail on November 1, 2024.[14]

Notwithstanding the multiple extensions Debtors requested, and were granted, to file documents, Debtors' case was dismissed, effective November 19, 2024, pursuant to 11 U.S.C. § 521(i).[15] Debtors filed a motion to reopen the case on December 18, 2024,[16] and an amended motion to reopen the case on December 19, 2024,[17] which the Court construed as a Motion to Reconsider Dismissal. The requested relief was denied,[18] but the Order retained jurisdiction to consider violations of the automatic stay, and required Debtors to file and properly notice any action concerning the violation of the stay on or before January 24, 2025.

This is one of three such actions brought by Debtors. In this case, Debtors allege Evan Bromley, as attorney for EAW, and the other Board Members, in their individual capacity, violated the automatic stay by taking the following actions: (1) sending a broadcast email to the residents on October 8, 2024, disclosing information about Debtors' account status and noting the decision to revoke Debtors' parking decals; (2) circulating an agenda on October 10, 2024, again referencing Debtors' delinquent account, the

---

[11] ECF No. 10.
[12] ECF No. 27.
[13] The Clerk of Court entered a deficiency notice informing Debtors that a statement of change must be filed with an amended list of creditors on October 30, 2024. ECF No. 28. Debtors filed a second amended list of creditors, including the required statement of change, on November 1, 2024. ECF No. 33.
[14] ECF No. 33.
[15] *See* Order Confirming Dismissal entered November 21, 2024, at ECF No. 46.
[16] ECF No. 56.
[17] ECF No. 59.
[18] *See* Order Denying Debtors' Motion to Reopen entered January 10, 2024, at ECF No. 74.

foreclosure action, and the revocation of access to the Property and parking passes; (3) actually revoking Debtors' access to the Property and parking privileges; and (4) actually towing Ard's 2020 RAM ProMaster van (the "Vehicle") from the premises. No evidence was presented at the hearing to prove that a broadcast email was sent to the residents of EAW on October 8, 2024. No evidence was presented at the hearing to prove that an agenda was circulated on October 10, 2024. No evidence was presented at the hearing to prove that Debtors were denied access to the Property or that Debtors' parking privileges were revoked. The parties agreed that the Vehicle was towed, but no evidence was presented to prove when the Vehicle was towed or who directed that the Vehicle be towed.[19] On November 11, 2024, Ard emailed the Board Members to demand that the Vehicle be returned and to assert a violation of the automatic stay.[20] Immediately thereafter, EAW took steps to return the Vehicle at no cost to the Debtors.

Debtors assert damages from Respondents' actions, which allegedly caused them to seek alternative housing, increased their living expenses, contributed to a loss of income, contributed to a loss of enjoyment of their life, and caused an inability to access documents needed to proceed in their bankruptcy case. In their amended Motion for Damages, Debtors elaborated on their incurred damages, stating they experienced an overwhelming amount of anxiety, distress, and humiliation as a result of having their Vehicle towed and parking privileges revoked.[21]

---

[19] *See* Exhibit 3. Ard introduced an email sent to her by EAW dated October 26, 2024, titled "Parking Violation at the Estate at Westbury." No evidence was introduced that any of the Respondents caused this email to be sent. There is also no indication in the email that the Vehicle was towed on the date it was sent.
[20] *See* Exhibit 2.
[21] Debtors also aver that Respondents' and EAW's actions violated the Fourteenth Amendment, 18 U.S.C. § 1512(b), the Fair Debt Collection Practices Act, 15 U.S.C. § 805(b), 15 U.S.C. § 806, 15 U.S.C. § 808, the Dodd-Frank Act, and the American with Disabilities Act. Debtors merely list these statutes in their amended Motion for Damages, and do not offer any additional facts in support of their claims or precedent

Evan Bromley filed an Objection to the Motion for Damages on February 7, 2025.[22]
Bromley alleges in his Objection and through his statement at the hearing that he did not
communicate with the Board Members or EAW concerning the Vehicle or Debtors'
parking privileges at any time after August 12, 2024, and that, upon learning of the
bankruptcy on October 4, 2024, his only action was to immediately stay the foreclosure
proceedings.[23] EAW likewise filed a Response to the amended Motion for Damages on
March 10, 2025.[24]

EAW and Bromley, jointly, and Debtors each submitted statements of dispute
("JSD") on March 21, 2025.[25] Debtors thereafter submitted an amended JSD.[26] The JSD
filed by EAW and Bromley raised the question, *inter alia*, of whether the Motion for
Damages was properly filed, and whether the relief sought in the Motion for Damages must
be requested in an adversary proceeding.

At the hearing, Ard provided the following background information without
objection. The Vehicle was parked at the Property. The Property is used as a secondary
home, business office, and rental unit. Debtors operate a property management business
and a moving service from the Property and utilize the Vehicle for commercial purposes.
Debtors left South Carolina for Michigan on October 8, 2024. There is no indication in the
record that, after departing on October 8, 2024, Debtors returned to South Carolina while

---

indicating that this Court has jurisdiction to hear them. The Court will therefore decline to address these
allegations in this Order.

[22] ECF No. 93.

[23] An Order staying the underlying foreclosure proceeding was entered October 16, 2024. Transcript of
Record at 39, ECF No. 115.

[24] ECF No. 100. EAW argues therein that Debtors should be subjected to sanctions under Fed. R. Bankr. P.
9011 for making purposeful misrepresentations regarding EAW's actions and Ms. Franklin's professional
conduct.

[25] ECF Nos. 103, 105.

[26] ECF No. 108.

this case was pending.[27]

At the hearing, the Court rendered judgment in favor of the Respondents but denied the requests for sanctions.

## DISCUSSION AND CONCLUSIONS OF LAW

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).[28] This Court has the authority to enter a final order in this matter and therefore makes the following findings of fact and conclusions of law.

### I.        Did Respondents willfully violate the automatic stay?

The automatic stay in this case was in place for forty-five days - from October 4, 2024, through November 18, 2024.[29] As no evidence was presented to prove that Respondents sent a broadcast email on October 8, that Respondents published an agenda on October 10,[30] or that Respondents denied Debtors access to the Property, the ruling, consistent with the arguments at the hearing, will focus on the revocation of the parking pass and the ensuing tow of Debtors' Vehicle.

"To recover damages for a violation of the automatic stay, a Debtor must demonstrate that (1) a bankruptcy petition was filed; (2) that the Debtor is an 'individual'

---

[27] After this case was dismissed, Debtors filed a second bankruptcy case, 25-40952-MLO, in the Eastern District of Michigan.

[28] Respondents challenged whether this action should have been brought as an adversary. The Court finds Debtors may proceed by way of motion to seek damages for violations of automatic stay under 11 U.S.C. § 362(k)(1). *See In re Hildreth*, 357 B.R. 650 (Bankr. M.D. Ala. 2006), *aff'd*, 362 B.R. 523, 2007 (Bankr. M.D. Ala. 2007; *In re Clarkson*, 168 B.R. 93, 93 (Bankr. D.S.C. 1994); *In re Ballard*, 503 B.R. 311, 317-18 (Bankr. S.D. Ohio 2013).

[29] *See* ECF No. 46, *supra* note 15.

[30] Debtors attached the agenda and circulating email to the Motion for Damages. These were not successfully introduced into evidence.  Even if these were in evidence, the agenda and email do not violate the provisions of 11 U.S.C. § 362(a).  The agenda merely indicates actions the Owners Association already took.  It does not indicate when these actions occurred or that they occurred post-petition.

protected under the automatic stay provision; (3) that Defendant received notice of the petition; (4) that Defendant's actions in violation of the stay were 'willful'; and (5) that the Debtor suffered damages." *In re Defeo*, 635 B.R. 253, 262 (Bankr. D.S.C. 2022) (citing *In re Hamrick*, 627 B.R. 619, 630 (Bankr. D.S.C. 2021)) (internal citations omitted).

A violation of the automatic stay must be proven by a preponderance of the evidence. *Id*. (citing *Warren v. Dill* (*In re Warren*), 532 B.R. 655, 660 (Bankr. D.S.C. 2015)). "A preponderance is such proof as leads the trier of fact to find that it is more probable than not, or more likely than not, that a contested fact exists." 32A C.J.S. Evidence § 1557 (2025). Debtors, therefore, must "present to the Court, as the finder of fact in a bench trial, evidence sufficient to satisfy this standard with respect to … the specific elements of law applicable" to each of their claims. *In re Joseph Walker & Co., Inc.*, 545 B.R. 132, 149 (Bankr. D.S.C. 2015).

"A willful violation of the automatic stay occurs when a 'creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it.'" *In re Defeo,* 635 B.R. at 262 (quoting *In re Warren*, 532 B.R. 665, 660) (internal citations omitted). "The Fourth Circuit has determined that to be liable for a willful violation under § 362(k), the creditor need not act with a specific intent to violate the automatic stay but must only commit an intentional act with knowledge of the automatic stay." *Id*. (citing *Citizens Bank of Md. v. Strumpf*, 37 F.3d 155, 159 (4th Cir. 1994), *rev'd on other grounds*, 516 U.S. 16 (1995)). The Court, therefore, must determine if and when Respondents received actual notice of the bankruptcy case, and, in turn, if and when they took the alleged action violating the stay.

"It is a debtor's responsibility to make sure that creditors have reasonable, actual

notice of a pending bankruptcy case." *In re Flack*, 239 B.R. 155, 163 (Bankr. S.D. Ohio 1999) (internal citations omitted). Bromley's law firm was included on the mailing matrix filed with the Voluntary Petition and Bromley does not contest that he received notice on October 4, 2024. The Court agrees. Debtors argue that because Bromley received notice of the bankruptcy case on October 4, 2024, and thereafter stayed EAW's foreclosure action against Debtors, then notice of the case is imputed to the Board Members on the same date. In this case, notice to Bromley was not tantamount to notice to the Board Members.

Neither EAW nor the Board Members were listed as creditors in Debtors' initial matrix[31] and were only added to the list of creditors on October 29, 2024, and noticed on November 1, 2024.[32] There is no evidence that Bromley informed the individual Board Members of the instant bankruptcy case. Ard stated on the record that she called the Board Members to inform them of the bankruptcy but provided no details as to who she called or when those calls took place.[33] As such, the Board Members received actual notice no earlier than November 1, 2024.

There is precedent for the notion that any notice Bromley received may be imputed to EAW, as he was representing EAW in a related non-bankruptcy proceeding when he received notice of the bankruptcy case. *See generally In re Morris*, 615 B.R. 189, 194 (Bankr. D. Md. 2020); *In re Najjar*, No. 06-01955 (AJG), 2007 WL 1395399, at *4 (Bankr. S.D.N.Y. May 11, 2007); *In re San Miguel Sandoval*, 327 B.R. 493, 510 (B.A.P. 1st Cir. 2005). However, Debtors have only alleged that Bromley and the individual Board Members have engaged in actions that violated the stay. To the extent that Bromley's

---

[31] *See* ECF Nos. 8–9, *supra* note 10.
[32] *See* ECF No. 27, *supra* note 12, and ECF No. 33.
[33] Transcript of Record at 12, ECF No. 115.

knowledge of the automatic stay may be imputed to his client, Bromley testified that he is

not and has never been the agent of any of the individual Board Members.[34] Debtors have

not alleged that the corporate veil should be pierced or that the Board Members should be

held vicariously liable for the actions of EAW. Had the Debtors sought to pierce the

corporate veil, they would have been required to meet a more stringent burden of proof to

hold the Board Members individually liable. *See generally In re AuditHead*, LLC, 624 B.R.

134, 144 (Bankr. D.S.C. 2020) ("[P]iercing the corporate veil 'is not a doctrine to be

applied without substantial reflection'. . . . and the party seeking to do so bears the burden

of proving it should be applied.") (internal citations omitted). Debtors cannot have it both

ways—imputing notice to individuals merely because they serve on a board, while

avoiding the evidentiary burden necessary to pierce the corporate veil. Therefore, the Court

will not impute notice to the Board Members as individuals. Further, there is no evidence

that the Board Members received actual notice of the bankruptcy before the acts

complained of by Debtors.

Having established that Bromley received actual notice on October 4, 2024, and the

other Board Members received notice no earlier than November 1, 2024, the Court must

now consider when the alleged violation occurred, which party took the alleged action, and

whether they were on notice of the bankruptcy at the time of the action. Ard conceded that

the parking pass may have been revoked pre-petition[35] and that the Vehicle was towed

sometime before October 29, 2024.[36] Only Bromley had actual notice of the case before

October 29, 2024, and he stated, without objection, that he took no action in this matter

---

[34] Transcript of Record at 40, ECF No. 115.
[35] Transcript of Record at 28, ECF No. 115.
[36] Transcript of Record at 14, ECF No. 115.

after canceling the foreclosure sale on October 16, 2024.

The evidence before the Court shows that Bromley had notice, but took no action to violate the stay. The Board Members may have taken some action, but had no notice. "A willful violation of the automatic stay occurs when a 'creditor knows of the pending bankruptcy petition and intentionally attempts to continue collection procedures in spite of it.'" *Defeo,* 635 B.R. at 262 (quoting *In re Warren*, 532 B.R. 665, 660) (internal citations omitted). The record does not establish when the alleged violations occurred, or which party took the action. The Court cannot, therefore, determine that a willful violation has occurred.

## II.     Were Debtors damaged by any alleged violation of the automatic stay?

Even if the Court were able to find that a willful violation of the stay occurred, in order to recover damages under § 362(k), the Debtor must also prove that they suffered damages resulting from the action. *In re Defeo*, at 262. In the Motion and Amended Motion for Damages, Debtors allege they suffered actual damages, including being locked out of their Property, an 80% loss in business revenue relating to lack of access to the Property and the towing of the Vehicle, doubled household expenses due to the cost of finding emergency housing, and legal costs. Debtors also allege that the violations of the stay made it impossible for Debtors to enter the Property and retrieve the records Debtors needed to complete their schedules and statements in this case, and therefore stymied their attempts to successfully prosecute their bankruptcy. Additionally, Debtors allege they suffered emotional damages because of the stay violations, including a total loss of enjoyment of life; overwhelming shame, anxiety, and distress; invasions of privacy; and progression of Nicola's chronic illness resulting from the stress of this case.

10

Debtors were given the opportunity at the hearing to present evidence of their damages, but no evidence was submitted. As a general principle, actual damages under 11 U.S.C. § 362(k) "must be prove[n] with reasonable certainty, and mere speculation, guess or conjecture will not suffice." *In re Nixon*, 419 B.R. 281, 291 (Bankr. E.D. Pa. 2009) (quoting *Aiello v. Providian Fin. Corp.*, 257 B.R. 245, 249 (N.D. Ill. 2000), *aff'd*, 239 F.3d 876 (7th Cir. 2001)); *accord In re Heghmann,* 316 B.R. 395, 405 (B.A.P. 1st Cir. 2004) ("actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount"); *In re Sculky*, 182 B.R. 706, 708 (Bankr. E.D.Pa. 1995) ("[d]amages may not be awarded based upon speculation, guess and conjecture"). The burden of proof on the issue is on the Debtors. *See, e.g., Main, Inc. v. Blatstein*, No. CIV. A. 98–5947, 1999 WL 424296, at *5 (E.D. Pa. June 23, 1999); *In re Lord*, 270 B.R. 787, 794 (Bankr. M.D. Ga.1998); *see generally In re FRG, Inc.*, 121 B.R. 451, 458 (Bankr. E.D. Pa.1990). "'[T]he party seeking damages ... bears the burden of proving that damages were actually incurred. Where no injury results from the violation ..., an award of damages is clearly inappropriate.'" *In re Voll*, 512 B.R. 132, 138 (Bankr. N.D.N.Y. 2014) (internal citations omitted).

Even if the Court found that liability for the action could be attributed to any of the named Board Members, the record shows EAW promptly returned the Vehicle and paid all fees associated with towing and storing the Vehicle upon receiving Debtors' email concerning the stay violations on November 11, 2024.[37] *In re Wright*, 608 B.R. 648, 653 (Bankr. W.D. Va. 2019) (noting other courts in the Fourth Circuit "traditionally view[s] 'actual damages' as a broad umbrella term, including, but not limited to, lost time damages,

---

[37] Transcript of Record at 44, ECF No. 115.

Case 24-03611-jd   Doc 118   Filed 04/29/25   Entered 04/29/25 15:32:44   Desc Main
Document    Page 12 of 14

out-of-pocket expenses, and emotional damages.") (internal citations omitted). Further, Ard stated that Debtors left South Carolina on October 8, 2024, and did not return until after the dismissal of this case.[38] While Debtors allege that the towing of the vehicle and the revocation of their parking pass adversely affected their hauling and moving business, Debtors were not aware that the Vehicle was towed until October 29, 2024,[39] and they made no attempt to use the parking pass after they left the District on October 8, 2024. Debtors provided no evidence that any jobs or contracts were cancelled because their associates were unable to use the Vehicle. *Nixon*, 419 B.R. at 291. Debtors have not met their burden of proof concerning actual damages relating to the towing of the Vehicle and the revocation of their parking passes.

Debtors' remaining claims for actual damages are also insufficient. Though there was no evidence that Respondents circulated the agenda[40] or prohibited Debtors from accessing the Property, Debtors presented no proof of damages, such as cancelled contracts, increased expenses, or lost income as a result of these actions. Further, Debtors are *pro se* and have no actual damages related to their legal costs in pursuing this motion for sanctions. Having failed to show that reimbursement for their legal costs is reasonable or necessary, damages for legal costs are inappropriate in this case. *Wright*, 608 B.R. at 653–54.

Debtors have also failed to provide credible and convincing evidence clearly showing a willful stay violation caused measurable harm to debtor to merit a damages award for emotional distress. Debtors' claims of emotional distress are not corroborated by

---

[38] Transcript of Record at 12 and 20, ECF No. 115.
[39] Transcript of Record at 14, ECF No. 115.
[40] *See, supra*, note 30.

additional evidence. *Defeo*, 635 B.R. at 266. ("'Unless the creditor's conduct is particularly egregious, where emotional distress harm would be readily apparent, the claimant must establish emotional distress with corroborating evidence, such as expert testimony, medical testimony, or credible testimony from non-experts such as family members.'") (quoting *Wright*, 608 at 654) (internal citations omitted). Debtors have not alleged or proved that they sought medical treatment or counseling in relation to the alleged violations of the stay and have not introduced into evidence medical or medication bills that might demonstrate significant harm that could be causally connected to said allegations. Debtors have not provided any expert or non-expert witness testimony further confirming Debtors' allegations that the email dated October 8, 2024, the circulation of the meeting agenda, the towing of the Vehicle, the revocation of access to the Property, and the revocation of Debtors' parking privileges resulted in Debtors' measurable emotional distress. Debtors have therefore failed to prove by credible and convincing evidence that a causal connection exists between the alleged stay violations and their measurable emotional distress, or that their distress was proximately caused by the stay violations. *Defeo*, 635 B.R. at 266. Debtors' allegations of emotional distress are too tenuous to merit an award of damages.

**IT IS, THEREFORE, ORDERED:**

(i)     Debtors' Motion for Damages and Amended Motion for Damages are denied; and

(ii)    The Court denies Debtors leave or a continuance to subpoena witnesses, compile and present additional evidence, file a motion for reconsideration to add EAW to the Motion for Damages and Amended Motion for Damages as a

liable party, or to bring an adversary proceeding against EAW, Bromley, the

Board Members, or Franklin.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**04/29/2025**



*S. Jefferson Davis IV*

US Bankruptcy Judge
District of South Carolina

Entered: 04/29/2025

14